# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47152-3-II |
| Respondent, | |
| v. | |
| SARAH JOCLYN OLIVAS, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Sarah Olivas appeals her conviction of first degree murder, which was based on her guilty plea. We hold that (1) the trial court had no obligation to address self-defense when discussing Olivas's guilty plea because Olivas presented no evidence of self-defense before or at the guilty plea hearing, (2) there was a sufficient factual basis for the guilty plea because the absence of self-defense is not an element of first degree murder and Olivas presented no evidence of self-defense before or at the guilty plea hearing, and (3) the trial court erred in imposing discretionary LFOs without determining Olivas's ability to pay. We also exercise our discretion and decline to award appellate costs to the State. Therefore, we affirm Olivas's conviction, but remand for a determination of her ability to pay discretionary LFOs.

FACTS

On July 17, 2014, Olivas and Patrick Frender were in Frender's residence in Allyn along with two others. Olivas became upset, paced back and forth, and went outside. She said, "I'm

gonna kill them all." Clerk's Papers (CP) at 42. A few minutes later, Olivas entered the house, retrieved a shotgun from the back bedroom, said something to Frender, and aimed the shotgun at him as he sat in a chair. Olivas then shot him in the face and head. Frender died from the shooting.

The State charged Olivas with first degree murder with a firearm enhancement. Olivas agreed to plead guilty in exchange for the State dropping the firearm enhancement, agreeing not to file a holdback charge for unlawful possession of a firearm, and agreeing to recommend a standard range sentence.

At the guilty plea hearing, Olivas explained that she had read the plea agreement, understood every word of it, and did not need more time to talk with her attorney about it. Olivas stated that she had gone over the elements of the offense with her attorney. She confirmed that she understood the charge, that she was waiving her right to trial, and that she could be sentenced to life in prison. Olivas also stated that she understood that the standard range sentence was 271 to 361 months and that she would have 36 additional months of community custody.

In her guilty plea statement, Olivas stated in her own words what made her guilty of first degree murder: "On July 17, 2014 in Mason County, Washington, I premeditated and intentionally shot and killed Patrick Frender." CP at 24. The trial court then asked, "Your statement says on July 17, 2014 in Mason County, Washington, I premeditated and intentionally shot and killed Patrick Frender. Is all of that true?" Report of Proceedings (RP) at 23. Olivas replied, "It is, your Honor." RP at 24. Olivas further stated that the shooting was not something she had planned, but that she had been informed that raising the gun was premeditation and so

she said she "guessed so" in response to whether the statement was true. RP at 24. She also agreed when the trial court asked her whether there was "a moment in time, however short, that you thought about it." RP at 24.

Olivas confirmed that pleading guilty was her own choice, that no one made promises to her that were not in the written plea agreement, and that no one threatened her to get the guilty plea. She also agreed that the trial court could consider the declaration of probable cause in deciding if there was a factual basis for the plea. Based on this colloquy, the trial court entered a finding that Olivas's plea was "knowingly, intelligently, and voluntarily made," that Olivas "understands the charges and the consequences of the plea," and that a factual basis for the plea existed. CP at 24.

At sentencing, Olivas claimed that she had been drugged and raped with a foreign object, apparently by Frender. She claimed that on the day of the shooting Frender tied her up, that she was in fear for her life, and that she was able to escape before the shooting occurred. Olivas did not make any similar claims at her guilty plea hearing and no such claims were reported in the declaration of probable cause.

The trial court imposed a standard range sentence and imposed both mandatory and discretionary LFOs. Olivas appeals.

## ANALYSIS

### A. VOLUNTARINESS OF GUILTY PLEA

Olivas claims that her guilty plea was involuntary because the trial court did not inform her that the State would have had the burden at trial to disprove a self-defense claim. We

3

disagree because the trial court had no obligation to address self-defense when discussing Olivas's guilty plea.

Due process requires that a guilty plea be accepted only upon a showing that the accused understood the nature of the charge, the consequences of the plea, and entered the plea intelligently and voluntarily. *State v. A.N.J*, 168 Wn.2d 91, 117, 225 P.3d 956, 969 (2010). This includes an awareness of possible defenses where the defendant makes known facts supporting such a defense. *State v. Haydel,* 122 Wn. App. 365, 370, 95 P.3d 760 (2004). A defendant is entitled to claim self-defense when she reasonably believes that she is about to be injured and uses no more force than necessary to prevent the offense. RCW 9A.16.020(3); *State v. Kyllo,* 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

In *In re Personal Restraint of Montoya,* the Supreme Court addressed whether the defendant had made a knowing, intelligent, and voluntary plea when the defendant was unaware of the burden of proof on the issue of self-defense. 109 Wn.2d 270, 279, 744 P.2d 340 (1987). The court held that because Montoya had not raised a self-defense claim and failed to present any credible evidence to support one, the trial court had no obligation to inform Montoya about the burden of proof on the issue of self-defense. *Id.* at 280. The court stated, "The trial court certainly had no obligation to inform Montoya of the burden of proof on a purely hypothetical claim." *Id.* In *State v. Haydel*, Division One of this court rejected a similar argument because the defendant had failed to present any evidence to support a self-defense claim. 122 Wn. App. at 371.

Here, nothing in the record shows that at the time Olivas entered her guilty plea she had asserted a self-defense claim or presented any facts to support such a claim. Olivas's only

reference to self-defense occurred at sentencing several days later, after the trial court already had accepted the guilty plea. As a result, the trial court had no obligation to inform Olivas when she entered her guilty plea of the applicable burden of proof when a defendant claims self-defense.

Olivas does not assert any other basis to withdraw her plea as involuntary and fails to make any showing that her plea was involuntary. As noted above, the trial court had an extensive colloquy with her before finding that her plea was knowing, voluntary, and intelligent. Olivas also stated that she had discussed her case in detail with her attorney, that she understood the elements of her offense, and that she was entering her plea without any undisclosed promises or coercion.

We hold that Olivas's claim fails because she cannot overcome the presumption that she made her plea with a complete understanding of the nature and consequences of her plea.

B.    FACTUAL BASIS FOR GUILTY PLEA

Olivas argues that the record did not provide a factual basis for the guilty plea because there was no evidence of an absence of self-defense. We disagree.

Due process requires that the trial court not accept a guilty plea unless it is satisfied that there is a factual basis for the plea. *State v. Codiga*, 162 Wn.2d 912, 922, 175 P.3d 1082 (2008); CrR 4.2(d). To establish the factual basis, the trial court can rely on any reliable information that has been made part of the record, including the prosecutor's statement of the facts if they are adopted by the defendant. *Codiga*, 162 Wn.2d at 924. The evidence must be sufficient to conclude that the defendant is guilty. *In re Pers. Restraint of Cross*, 178 Wn.2d 519, 526, 309 P.3d 1186 (2013), *cert. denied*, 135 S. Ct. 1701 (2015).

The State charged Olivas with first degree premeditated murder under RCW 9A.32.030(1)(a). The elements of this crime are that the defendant "[w]ith a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person." RCW 9A.32.030(1)(a). During the plea colloquy, Olivas averred that she understood the elements of the offense and that she intentionally shot and killed Frender with premeditation. This statement is sufficient to show a factual basis for first degree murder.

Olivas seems to argue that the absence of self-defense is an element of first degree murder that must be established in order to satisfy the factual basis requirement. However, the absence of self-defense becomes an element that the State must prove only after the issue of self-defense is properly raised. *State v. McCullum*, 98 Wn.2d 484, 493-94, 656 P.2d 1064 (1983). As noted above, at the time Olivas entered her guilty plea she had not asserted a self-defense claim or presented any facts to support such a claim. Therefore, the trial court did not need to include the absence of self-defense in its factual basis determination.

We hold that a sufficient factual basis supported Olivas's guilty plea to first degree murder.

C.      LEGAL FINANCIAL OBLIGATIONS

Olivas argues that the trial court erred by failing to conduct an individualized assessment of her present financial ability to pay before imposing discretionary LFOs as required under RCW 10.01.160(3). The State concedes error, but argues that Olivas waived this issue by not objecting below. We exercise our discretion to consider this issue, and hold that the trial court erred in imposing discretionary LFOs.

Olivas did not object when the sentencing court failed to make an on the record assessment of her present and future ability to pay before imposing LFOs. Despite this failure to object, we have discretion to consider LFO challenges raised for the first time on appeal. *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015).

Here, the record indicates that the trial court found Olivas indigent at the time of trial. At sentencing defense counsel represented that the victim had picked up Olivas while she was hitchhiking and taken her in to live with him, which suggests that she had no stable home and limited financial resources. The record indicates that Olivas suffered from mental health issues. Finally, she was sentenced to 30 years in prison and she was 34 years old at the time of sentencing. These circumstances provide a basis for us to consider Olivas's LFO challenge on appeal. In addition, the State concedes error. Therefore, there is no compelling reason not to consider Olivas's LFO challenge on appeal.

Before imposing discretionary LFOs, the trial court must make an individualized inquiry into the defendant's present and future ability to pay. *Blazina*, 182 Wn.2d at 838. As the State concedes, the trial court did not make such an inquiry here. Therefore, the trial court erred in imposing discretionary LFOs. We remand for the trial court to determine Olivas's ability to pay before imposing discretionary LFOs.

D.      APPELLATE COSTS

Olivas filed a supplemental brief requesting that, if the State substantially prevails in this appeal, we decline to impose appellate costs on her because she claims she is indigent. The State argues that we should award appellate costs if the State properly files a cost bill. We exercise our discretion and decline to impose appellate costs on Olivas.

7

Under former RCW 10.73.160(1) (1995), we have broad discretion whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, ___ P.3d ___ (2016). Ability to pay is an important factor in the exercise of that discretion, although it is not the only relevant factor. *Sinclair*, 192 Wn. App. at 389.

As discussed in the LFO section above, it appears from the limited trial court record that Olivas does not have the present ability to pay appellate costs and it is questionable whether she will have the future ability to pay. In addition, she apparently has mental health issues that may hinder her integration into society once she is released from prison. Under the specific circumstances of this case, we decline to impose appellate costs on Olivas.[1]

CONCLUSION

We affirm Olivas's conviction, but remand for a determination of her ability to pay discretionary LFOs. And we decline to impose appellate costs on Olivas.

---

[1] Our determination is based on the record on appeal. Whether the trial court decides to impose discretionary LFOs on remand will depend upon the trial court's additional inquiry. Therefore, the exercise of our discretion to not impose appellate costs should not affect the trial court's decision on the imposition of discretionary LFOs.

No. 471523-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
BJORGEN, C.J.

_____
SUTTON, J.

9